UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/19/2017

MARCELINO CASTRO,

    Plaintiff,

-against-

GRAHAM WINDHAM,

    Defendant.

1-16-cv-08148 (LTS) (KHP)

**REPORT AND RECOMMENDATION**

**татo:** **THE HONORABLE LAURA TAYLOR SWAIN, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

    Plaintiff Marcelino Castro asserts a claim under 42 U.S.C. § 1983 ("Section 1983") alleging that Defendant violated his rights by taking his child on a trip outside of the State of New York without his permission. (Doc. No. 2.) Defendant subsequently moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Doc. No. 13.) For the reasons that follow, this Court respectfully recommends that Defendant's motion to dismiss be **granted** and that the Complaint be dismissed in its entirety.

## BACKGROUND

    On October 13, 2016, Plaintiff, who is proceeding pro se and is incarcerated, commenced this action against Defendant Graham Windham. (Doc. No. 2.) Defendant is a private foster care agency that is involved with the care of Plaintiff's child, who has been placed with foster parents since at least June 2016. (Doc. No. 2; *see also* Doc. No. 14-2.) In the Complaint, Plaintiff alleges that Defendant violated his rights under Section 1983 by "taking [his] child out-of-state without [his] permission." (Doc. No. 2.) Specifically, Plaintiff alleges that, in June 2016, Defendant permitted the foster parents to take his child on a trip from New York to Florida without his permission or consent. (Doc. No. 2.) Plaintiff claims that he called

Defendant in June 2016 and told a supervisor that the foster parents could not take his child to Florida. (Doc. No. 2.) He further alleges that, in the last week of June 2016, he called Defendant and asked a supervisor why his child had been taken to Florida, but the supervisor refused to provide him with an answer. (Doc. No. 2.)

On February 24, 2017, Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6). (Doc. No. 13.) Defendant argues that the Complaint fails to state a claim under Section 1983 because: (1) it is not a state actor, and (2) the Complaint does not allege that Defendant engaged in intentional conduct that deprived Plaintiff of his constitutional rights or privileges. (*See generally* Doc. No. 15.) In support of its motion, Defendant annexed two orders issued by the Family Court of the State of New York, dated March 7, 2014 and September 8, 2016. (Doc. Nos. 14-1 & 14-2.) The two orders limit Plaintiff's contact with his child and state that he may only have supervised visits with her. (Doc. Nos. 14-1 & 14-2.) The September 8, 2016 order further directs that Plaintiff's child shall remain in the custody of the Commissioner of Social Services pending further proceedings, and schedules a permanency hearing regarding the termination of Plaintiff's parental rights. (Doc. No. 14-2.) Defendant also provided Plaintiff with "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings" as required under Local Rule 12.1. (Doc. No. 13.) Plaintiff did not oppose Defendant's motion to dismiss.

On March 22, 2017, this Court held an Initial Case Management Conference in this matter via telephone. At this time, the Court learned that Plaintiff required the services of a Spanish-language interpreter and adjourned the conference. Although parties in a civil action are ordinarily required to provide their own interpreter if one is needed, this Court contacted

the New York Legal Assistance Group ("NYLAG") in an effort to find pro bono interpreter services for Plaintiff to enable him to participate in the initial conference and understand the next steps in this action.

On May 3, 2017, the Court held an Initial Case Management Conference with the assistance of a NYLAG volunteer who graciously agreed to translate the conference for Plaintiff. The Court asked Plaintiff to explain the nature of his claims. Through the interpreter, Plaintiff stated that his claims were premised on the fact that Defendant had taken his daughter on a short trip to Florida. In response, Defendant explained its position that Plaintiff had failed to state a claim under Section 1983 because there is no federal right implicated by Plaintiff's allegations. Counsel for Defendant also represented that there was a hearing scheduled in New York State Family Court regarding the termination of Plaintiff's parental rights, noting that Plaintiff is represented by an attorney in that action. The Court then advised Plaintiff that Defendant had filed a motion to dismiss the Complaint and confirmed that Plaintiff had received a copy of the motion papers. Plaintiff responded that he had. Plaintiff also advised the Court that he had someone in the prison to assist him with translation of documents and submission of documents to the Court. The Court next explained that all discovery in this matter must be completed by December 31, 2017. Following the conference, the Court issued a Scheduling Order setting forth, *inter alia*, the discovery deadline and directing the parties to file a letter to the Court regarding discovery by October 2, 2017. (Doc. No. 23). In the Order, the Court directed Defendant to provide Plaintiff with a copy of the Scheduling Order translated into Spanish.

## DISCUSSION

I.  **LEGAL STANDARD FOR MOTION TO DISMISS**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). To survive the motion, the court must determine whether the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id.* It must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). And, it must contain more than a "formulaic recitation of the elements of a cause of action." *Id.* As the U.S. Supreme Court explained in *Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The same standard applies to both counseled and pro se complaints. *See Legeno v. Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009); *Jenkins v. N.Y.C. Dep't of Educ.*, No. 10-cv-6159 (BSJ) (THK), 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011) (pro se status "does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure"). However, a pro se plaintiff's complaint must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpreted as raising the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

In ruling on a motion to dismiss, the court may take judicial notice of state court orders.

*See Giaraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may take judicial notice of matters in the public record); *Koltun v. Berry*, No. 13-cv-1612 (PAC) (JCF), 2013 WL 3816603, at *1 (S.D.N.Y. July 19, 2013) (collecting cases).

Finally, Plaintiff's decision not to oppose Defendant's motion to dismiss does not, standing alone, require the dismissal of his claims. *Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)).

## II. APPLICATION OF LEGAL STANDARD TO PLAINTIFF'S CLAIMS

To state a claim under Section 1983, a plaintiff must allege that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Defendant argues that Plaintiff's Complaint should be dismissed because it fails to allege facts supporting either prong of a Section 1983 claim. This Court will address each argument in turn.

### A. State Actor

Defendant asserts that because it is a private foster care agency, it is not a state actor for purposes of stating a claim under Section 1983. (Doc. No. 15 pp. 6-8.) "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir.

5

2005) (internal quotations and citation omitted); *see also Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action."). "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting A*m. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

The Second Circuit has recognized that there is no single test to determine whether an entity is a state actor. *Fabrikant*, 691 F.3d at 207. Rather, this Circuit has recognized three tests that may be applied:

> For the purposes of Section 1983, the actions of a nominally private entity are attributable to the state ... (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Id.* (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). The critical inquiry under all three tests is whether the "private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In *Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974), the Second Circuit squarely addressed the question of whether the actions of a private foster agency constituted "state action" within the purview of Section 1983. *Id.* at 764-66. In *Perez*, the plaintiff asserted Section 1983 claims against two private child-care institutions, alleging that the institutions unconstitutionally

detained plaintiff's children. *Id.* at 763. The district court dismissed the complaint against the private institutions for lack of subject matter jurisdiction. *Id.* The Second Circuit disagreed and reversed, holding that the acts of the private institutions qualified as state action and, thus, the district court had subject matter jurisdiction over the claims. *Id.* at 763-64. The court reasoned that New York's statutory scheme contemplated that private entities could be used to carry out the "public function" of caring for children in the State and that the State was "in effect [] providing the care through the private institutions." *Id.* at 765. It further reasoned that the State's comprehensive regulatory scheme governing foster agencies was compelling evidence of the State's entwinement with the private institutions' operations. *Id.* at 765-66.

In *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977), the Second Circuit was asked to reconsider whether the conduct of private foster agencies is state action in light of the Supreme Court's intervening decision in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974). *Duchesne*, 566 F.2d at 822 n.4. In *Jackson*, the Supreme Court held the acts of a privately owned utility company did not constitute state action because the provision of utility services "is not traditionally the exclusive prerogative of the State," among other reasons. 419 U.S. at 352-59. The Second Circuit in *Duchesne* summarily stated that it had considered the implications of *Jackson*, but reaffirmed its holding of state action in *Perez*. *Duchesne*, 566 F.2d at 822 n.4.

Recently, courts in this District have questioned the doctrinal premise of *Perez* and *Duchesne* and have suggested that intervening Supreme Court decisions have so drastically changed the legal landscape in this area of Section 1983 jurisprudence that the two cases "are arguably no longer good law." *Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259, 268 (E.D.N.Y. 2011); *see also, e.g., P.P. v. City of New York*, No. 13-cv-5049 (CM) (FM), 2014 WL 4704800, at

7

*15 (S.D.N.Y. Sept. 19, 2014). In *Phelan,* an action involving Section 1983 claims against a foster care agency and other defendants, the court observed that the state action jurisprudence since *Perez* has "increasingly emphasized the 'exclusivity' aspect of the [public function] test." 843 F. Supp. 2d at 261-62, 268-70 (citing, *i.e.*, *Blum v. Yaretsky,* 457 U.S. 991, 1011-12 (1982)*; Rendell-Baker*, 457 U.S. at 842). The court in *Phelan* cited to case law and scholarship recognizing that the care of abandoned children was historically a wholly private function in New York, finding that "these authorities provide persuasive support, under the Supreme Court's current jurisprudence, for the conclusion that foster care agencies do not perform a function that has been 'traditionally *exclusively* reserved to the State.'" *Id.* at 270-74 (emphasis in original) (quoting *Jackson*, 419 U.S. at 352). Nevertheless, the court concluded that it was bound to assume that private foster agencies are state actors under Second Circuit precedent, and dismissed the claims on other grounds. *Id.* at 274. In affirming the dismissal of the case on appeal, the Second Circuit "assumed[ed] without deciding that [the foster agency] qualifies as a state actor subject to suit under [Section] 1983." *Phelan ex rel. Phelan v. Mullane*, 512 F. App'x 88, 90 (2d Cir. 2013).

While the court in *Phelan* sets forth persuasive reasoning and authority to support its argument that the viability of *Perez* has been eroded by intervening Supreme Court precedent, this Court agrees with the *Phelan* court's ultimate conclusion—it must be assumed that private foster care agencies are state actors under Section 1983 until the Second Circuit holds otherwise. *See also P.P.*, 2014 WL 4704800, at *15 (agreeing with *Phelan* that "subsequent doctrinal developments have significantly undermined *Perez*," but similarly concluding that private child care agencies must be deemed to be acting under the color of state law); *Panzardi*

8

*v. Jensen*, No. 13-cv-4441 (MKB), 2015 WL 739932, at *2 (E.D.N.Y. Feb. 20, 2015) (holding that Defendant Graham Windham might be a state actor under Section 1983).

### B. Intentional Deprivation Of Plaintiff's Constitutional Rights

Plaintiff appears to allege that his substantive due process rights under the Fourteenth Amendment of the U.S. Constitution were violated when the foster parents brought his daughter on an out-of-state vacation without his permission. It is undisputed that parents, under most circumstances, have a "constitutionally protected liberty interest in the care, custody and management of their children." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2011) (citation omitted). However, "[t]he constitutional privileges attached to the parent-child relationship . . . are hardly absolute" and may be abrogated in the best interests of the child. *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005).[1]

Defendant argues that Plaintiff has failed to state a claim because "it is well-established within this Circuit that there is no constitutional harm to a plaintiff's parental rights pursuant to Section 1983 unless the parent-child relationship itself has been targeted by the alleged action." (Doc. No. 15 pp. 4-5.) Although the Second Circuit has not addressed whether state action that imposes an incident effect on the parent-child relationship will suffice to support a parent's claim under Section 1983, other Circuits, as well as numerous district courts within this Circuit, have declined to find that a parent's constitutional rights are violated unless the state

---

[1] To the extent Plaintiff is seeking review of the state court decisions regarding his parental rights, such review is barred by the "domestic relations exception" to federal jurisdiction and is further precluded by the *Rooker-Feldman* doctrine. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (describing the domestic relations exception as "divest[ing] the federal courts of power to issue divorce, alimony, and child custody decrees"); *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) (*Rooker-Feldman* precludes federal review of family court proceedings regarding issues of child custody, including issues "inextricably intertwined" with the state court's determinations).

9

action was aimed at specifically interfering with the parent-child relationship. *See, e.g., Russ v. Watts,* 414 F.3d 783, 787-88 (7th Cir. 2005) (collecting cases); *McCurdy v. Dodd,* 352 F.3d 820, 829-30 (3d Cir. 2003) ("It would . . . stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship."); *Horton v. Bd. of Educ. of the Sherburne-Earlville Cent. Sch. Dist.*, No. 5:15-cv-782 (MAD), 2016 WL 2354266, at *3-4 (N.D.N.Y. May 4, 2016); *Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 200-01 (E.D.N.Y. 2011); *Rodenhouse v. Palmyra-Macedon Cent. Sch. Dist.*, No. 07-cv-6438 (CJS), 2008 WL 2331314, at *4 (W.D.N.Y. June 3, 2008). Here, there is no basis to conclude that Defendant's act of allowing Plaintiff's daughter to go on a short vacation to Florida with her foster parents was directed specifically towards the disruption of the family relationship. Plaintiff acknowledges that his daughter was under the care of the foster parents prior to the trip, and the state court records submitted by Defendant suggest that the Family Court had already limited Plaintiff's visitation and contact rights with his daughter prior to the trip. (*See* Doc. Nos. 2 & 14-1.) Plaintiff does not allege, and this Court does not find, that Plaintiff's parental rights were in any way intentionally targeted or otherwise altered by the brief trip to Florida.

Moreover, a substantive due process claim will not survive a Rule 12(b)(6) motion to dismiss unless the complaint alleges state conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (holding that substantive due-process rights guard against the government's arbitrary "exercise of power without any reasonable justification in the service of a legitimate governmental objective" and "only the

10

most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"). "It is not enough that the government act be incorrect or ill-advised; it must be conscience-shocking." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (internal quotations and citation omitted). Defendant's failure to obtain Plaintiff's consent and/or disregard of his request that his daughter not go to Florida on a short vacation is not the type of "conscious-shocking" conduct that can give rise to a due process violation under the circumstances of this case. Given that Plaintiff's daughter was already in the custody of foster parents, Plaintiff's rights and ability to make day-to-day decisions about his daughter's care had already been circumscribed by the State. Plaintiff's incarceration status further makes it more difficult for Defendant to seek his consent or engage in negotiations about routine matters such as a short trip. Finally, Plaintiff does not allege that Defendant's conduct was motivated by malice. Nor, in this Court's view, does Defendant's conduct constitute even mere negligence. Thus, whatever harm Plaintiff perceived from Defendant's conduct, it is far below the threshold of a constitutional harm. *See Okin v. Vill. of Cornwell-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) ("negligently inflicted harm is categorically beneath the threshold of constitutional due process") (quoting *Cnty. of Sacramento*, 523 U.S. at 850). Therefore, Plaintiff's claim also independently fails for this reason.

Public policy considerations further support the dismissal of Plaintiff's claim. In 2014, Congress passed the Preventing Sex Trafficking and Strengthening Families Act, which amended the Social Security Act to add a provision entitled "Supporting Normalcy for Children in Foster Care," among other amendments. *See* P.L. 113-183 § 111 (2014). This provision requires the states to establish and maintain standards for foster care institutions that support normative

11

experiences for children in the foster care system through the use of the "reasonable and prudent parenting standard." *Id.* In New York, the State Office of Children and Family Services ("OCFS") has issued guidance stating that the "reasonable and prudent parent standard" applies to traveling with a foster child. *See* 15-OCFS-ADM-21, *Supporting Normative Experiences for Children, Youth, and Young Adults in Foster Care: Applying a Reasonable Prudent Parent Standard*, dated September 25, 2015, *available at* http://ocfs.ny.gov/main/policies/external/OCFS_2015/ADMs/15-OCFS-ADM-21 Supporting Normative Experiences for Children, Youth, and Young Adults in Foster Care - Applying a Reasonable and Prudent Parent Standard.pdf (last accessed September 19, 2017). Under this standard, foster parents are required to notify a foster child's case worker before traveling out-of-state. *Id.* at Attachment C, p. 5. The OCFS guidance further suggests that foster parents should, "where appropriate, engage the [birth] parent . . . in determining the child's ability to travel," but does not require that a foster parent seek, or obtain, consent from the biological parent before the child can travel. *Id*. In light of the State's legitimate interests in, *inter alia*, promoting normative experiences for children in foster care and encouraging people to serve as foster parents without being subject to undue hardship and administrative burdens, the OCFS policy regarding travelling with foster children is reasonable. Requiring a foster parent to obtain permission from a parent who may be hostile or adverse to the foster arrangement itself could create an impediment to the routine decisionmaking process of the guardian, and could potentially discourage foster parents from serving in the role and interfere with the child traveling with the family in the normal course of family life.

## CONCLUSION

For the foregoing reasons, this Court recommends GRANTING Defendant's motion to dismiss pursuant to Rule 12(b)(6).

**SO ORDERED.**

Dated: September 19, 2017
New York, New York

_____
**KATHARINE H. PARKER**
**United States Magistrate Judge**

### NOTICE

**Plaintiff shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until October 6, 2017). See also FED. R. CIV. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Defendant shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.**

**If Plaintiff files written objections to this Report and Recommendation, Defendant may respond to the Petitioner's objections within fourteen days after being served with a copy. FED. R. CIV. P. 72(b)(2). Alternatively, if Defendants file written objections, Plaintiff may respond to such objections within seventeen days after being served with a copy. FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Swain. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**

**A copy of this Order has been mailed to:**

Marcelino Castro a/k/a Marcerlo Castro Martinez
NYS Inmate No. 09638949L
**George R. Vierno Center (GRVC)**
09-09 Hazen Street
East Elmhurst, NY  11370